| | | |
|---|---|---|
| BRETT COCHRAN and JASON BRICKER, individually and on behalf of all THERMAL LABEL WAREHOUSE, LLC 401(K) PROFIT SHARING PLAN PARTICIPANTS, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: _____ |
| THOMAS L. SHAW, JR. (individually and as Trustee of the Thermal Label Warehouse, LLC 401(K) Profit Sharing Plan), THERMAL LABEL WAREHOUSE, LLC, and THERMAL LABEL WAREHOUSE, LLC 401(K) PROFIT SHARING PLAN, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Comes now Plaintiffs Brett Cochran ("Cochran") and Jason Bricker ("Bricker"), individually and on behalf of all Thermal Label Warehouse, LLC 401(k) Profit Sharing Plan Participants (the "Participants") (collectively, "Plaintiffs"), by and through counsel, and sue Thomas L. Shaw, Jr. (individually and as Trustee of the Thermal Label Warehouse, LLC 401(K) Profit Sharing Plan), Thermal Label Warehouse, LLC, and the Thermal Label Warehouse, LLC 401(k) Profit Sharing Plan (collectively, "Defendants"), and for their causes of action against them respectfully states as follows:

### NATURE OF THE ACTION

1.     This is a civil complaint brought under the Employee Retirement Income Security Act of 1974 ("ERISA") § 502, 29 U.S.C. § 1132, and federal common law, regarding breach of

the terms of an employee benefit plan and breach of fiduciary duty, for the purpose of compelling Defendants to make certain contributions on behalf of Plaintiffs to an employee benefit plan established and maintained by Defendants in the amounts and at the levels promised and for an accounting, recovery of damages, costs, and attorneys' fees incurred as a consequence of Defendants' failure to do so.

## PARTIES AND JURISDICTION

2.      Brett Cochran is a Tennessee resident and citizen of Knox County, Tennessee.

3.      Jason Bricker is a Tennessee resident and citizen of Knox County, Tennessee.

4.      Thomas L. Shaw, Jr. ("Shaw") is a Tennessee resident and can be served with process at 12423 Mallard Bay Drive, Knoxville, Tennessee 37922.

5.      Thermal Label Warehouse, LLC ("Thermal Label") is a Tennessee limited liability company organized with the Tennessee Secretary of State on or around October 3, 2008.  Thermal Label may be served with process through its registered agent, Thomas L. Shaw, at 12423 Mallard Bay Drive, Knoxville, Tennessee 37922.

6.      Thermal Label Warehouse, LLC 401(k) Profit Sharing Plan ("the Plan") is an employee benefit plan that may be sued under ERISA as an entity.  The Plan may be served with process through the Secretary of Labor, Employee Benefits Security Administration, U.S. Department of Labor  at 200 Constitution Avenue, N.W., Washington, D.C. 20210.

7.      This Court has subject matter jurisdiction over Plaintiffs' ERISA claims pursuant to 29 U.S.C. §§ 1132(e)(1), (f).

8.      This Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4.

9.      Venue properly lies in this District pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

2

## FACTUAL ALLEGATIONS

10.     Thermal Label is a nationwide distributor of thermal printing products.

11.     Upon information and belief, as of the date of this filing, Thermal Label has three members, one of which is Shaw.

12.     In or around January 2019, Thermal Label adopted the Plan pursuant to an Adoption Agreement for Retirement Solutions Specialists Non-Standardized Defined Contribution Pre-Approved Plan (the "Adoption Agreement").  A copy of the Adoption Agreement is attached hereto as Exhibit 1.

13.     According to the Adoption Agreement, Thermal Label is the Administrator of the Plan, and Shaw is the Trustee of the Plan.

14.     The Plan, by its express terms, is intended to provide retirement income to employees.  The Plan's Summary Plan Description, 404a-5 Plan & Investment Notice, Safe Harbor Notification to Eligible Employees, and Plan Binder is attached hereto as Collective Exhibit 2.

15.     The Plan is an Employee Benefit Plan within the meaning of 29 U.S.C. § 1002(3).

16.     Under the terms of the Plan, the Plan's Participants are entitled to a safe harbor matching contribution each year equal to 100% of such Participant's salary deferrals that do not exceed 3% of the Participant's compensation plus 50% of the Participant's salary deferrals between 3% and 5% of the Participant's compensation (the "Safe Harbor Contribution").  The Safe Harbor Contribution is 100% vested.  *See* Collective Exhibit 2.

17.     Cochran's wife, Lana Cochran ("Lana"), Bricker, and the Participants are or were participants in the Plan during all or a portion of 2019 to 2024.  The Participants are or were participants in the Plan within the meaning of 29 U.S.C. § 1002(3).

18.     Thermal Label failed and refused to make the Safe Harbor Contribution or any other contribution to the Plan on behalf of the Participants from 2021 to the present, despite its obligation to do so.

19.     At all relevant times, Thermal Label and Shaw exercised discretionary authority or discretionary control respecting management of the Plan or otherwise exercised authority or control respecting management or disposition of the Plan's assets, or discretionary authority or discretionary responsibility in the administration of the Plan.  Accordingly, Thermal Label and Shaw were fiduciaries with respect to the Plan, as that term is defined in 29 U.S.C. § 1002(21)(A).

<u>**COCHRAN**</u>

20.     Lana was employed by Thermal Label Warehouse from in or about 2009 until May 15, 2023.

21.     On May 15, 2023, Lana died intestate.

22.     On information and belief, Lana participated in the Plan from in or about 2019 until her death.  During this time, Lana was a participant in the Plan within the meaning of 29 U.S.C. § 1002(3).

23.     Lana listed Cochran as the named beneficiary of her Plan account.

24.     Following Lana's death, on or about May 15, 2023, Cochran contacted Shaw to inquire as to whether Lana participated in the Plan.

25.     Initially, Shaw told Cochran that Lana did not participate in the Plan.  However, on or about June 13, 2024, when Cochran inquired about Lana's participation again, Cochran replied: "It looks like Lana DID participate in the 401k.  I'll be honest with you….I'm a little bit behind in submitting these and the employer match.  I'll look into it further and let you know Monday-Tuesday."  A copy of Shaw's messages with Cochran is attached hereto as <u>Collective Exhibit 3</u>.

4

26.     Having received no answers from Shaw as promised, Cochran again inquired regarding the status of Lana's Plan account on June 21, 2024, June 24, 2024, and June 25, 2024. On June 25, 2024, Shaw stated: "Brett….until you asked me about it I had no idea that Lana participated in the retirement account….just like you.  Jason Bricker supposedly took care of this…" *See* Collective Exhibit 3.

27.     On or around June 25, 2024, Shaw sent Cochran contact information for Retirement Solutions Specialists ("Retirement Solutions"), the Plan's third-party administrator, and stated: "Brett I will ask you to not. Close the account….leave something in if you can.  I am behind on funding the employer matching funds.  Trying to get this damn refinance done so I can take care of it." *See* Collective Exhibit 3.

28.     On June 25, 2024, Cochran contacted Retirement Solutions regarding Lana's account via the contact information Shaw provided.  That same day, Camille Williams, a Financial Processor with Retirement Solutions ("Williams") responded to confirm that Cochran was the named beneficiary on Lana's account and advise as to the documents Cochran must submit to request a beneficiary distribution withdrawal.  A copy of Williams' messages with Cochran is attached hereto as Collective Exhibit 4.

29.     Cochran submitted the required documents to Retirement Solutions on June 25, 2024.

30.     On June 26, 2024, Williams confirmed receipt of the documents and stated: "I also spoke to the administrator of this plan who advised that we wait for the corrections to be made before we send your request for processing.  Our office is working with Tom to get the Safe Harbor Match funded.  We will let you know once this has been settled." *See* Collective Exhibit 4.

5

31.     On July 2, 2024, Cochran followed up with Williams to check on the status of Shaw signing off on the beneficiary distribution withdrawal.  Williams responded: "We have not yet received the form back.  I did follow up with him this morning, but no response yet.  I completely understand your frustration.  Unfortunately, this is standard procedure for a 401k account withdrawal, the employer signature is always needed for any kind of withdrawal, even for the account holder, to ensure a variety of things.  The employer's signature is to confirm the request has been reviewed, the information on the form is accurate, and that the withdrawal is following the rules outlined by the IRS.  Our team will continue to follow up with him regarding your request and will inform you as soon as we receive the form back."  *See* Collective Exhibit 4.

32.     On July 25, 2024, Cochran again contacted Williams to ask the amount of the outstanding employer match.  Williams responded "I have spoken with our plan administrator who has spoken to me about the source, and she indicated the best and most accurate information will come from Tom.  Please reach out to Tom to get that information about the bond, because we do not have one on file for him.  We are the TPA of the plan, however we do not have authorization to make any kind of contributions on Tom's behalf."  Williams copied Kim Newman, who she identified as the plan administrator, on this message. *See* Collective Exhibit 4.

33.     To date, Shaw has not provided information regarding the outstanding employer-match contribution, nor has Shaw signed the required withdrawal form.  The outstanding employer-match contribution has not been made to Lana's Plan account, nor has Cochran received the requested beneficiary distribution withdrawal.

**<u>BRICKER</u>**

34.     Bricker was employed by Thermal Label Warehouse from in or about October 2016 to March 2024.

35.     Bricker participated in the Plan from in or about June 2019 to March 2024.  During this time, Bricker was a participant in the Plan within the meaning of 29 U.S.C. § 1002(3).

36.     From in or about December 2021 to March 2024, Thermal Label failed to make the required employer safe harbor matching contributions to Bricker's Plan account.

37.     Bricker has requested that the outstanding employer-match contribution be made to no avail.  To date, the employer-match contribution has not been made to Bricker's Plan account.

## CLASS ALLEGATIONS

38.     Plaintiffs Cochran and Bricker bring this action on behalf of themselves and on behalf of all individuals who have participated in the Plan from its inception in or about June 2019 through the present.

39.     Class action treatment of this action is appropriate because all of Fed. R. Civ. P. 23's class action requirements are satisfied.  In particular:

(a)     The exact number of the members of the Class is not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable.

(b)     Questions of law and fact are common to all class members because, *inter alia*, this action concerns Defendants' common actions and practices, as summarized herein.  The legality of these practices will be determined through the application of generally applicable legal principles to common facts.

(c)     Cochran's and Bricker's claims are typical of those members of the Class, as they and other members sustained damages arising out of the same wrongful conduct of Defendants.

7

(d)    Cochran, Bricker and their counsel will fairly and adequately represent the interests of the Class and their interests. They have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.

(e)    Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class proceedings is superior to all other available methods for the fair and efficient adjudication of this litigation.

## <u>COUNT I: ACTION UNDER ERISA, 29 U.S.C. § 1132(a)(1)(B), TO REQUIRE CONTRIBUTIONS (BY PLAINTIFFS AGAINST THERMAL LABEL)</u>

40.    Plaintiffs incorporate paragraphs 1 through 39 by reference as though fully stated herein.

41.    29 U.S.C. § 1132(a)(1)(B) authorizes a participant to bring a civil action to enforce his rights under the terms of the Plan, or to clarify his rights to future benefits under the terms of the Plan.

42.    Under the terms of the Plan, the Plan's Participants are entitled to a safe harbor matching contribution each year equal to 100% of such Participant's salary deferrals that do not exceed 3% of the Participant's compensation plus 50% of the Participant's salary deferrals between 3% and 5% of the Participant's compensation.

43.    Thermal Label failed to make, and Shaw failed to require or cause Thermal Label to make, the Safe Harbor Contribution or any other contribution to the Plan on behalf of the Participants from in or about December 2021 to the present, resulting in missed contributions and losses in an amount to be determined at trial. Such failure is a direct violation of the terms of the Plan.

8

## COUNT II: ACTION UNDER 29 U.S.C. § 1132(a)(3), TO REMEDY BREACH OF FIDCUIARY DUTY (BY PLAINTIFFS AGAINST THERMAL LABEL WAREHOUSE AND SHAW)

44.     Plaintiffs incorporate paragraphs 1 through 43 by reference as though fully stated herein.

45.     Pursuant to 29 U.S.C. § 1104(a), as a fiduciary with respect to the Plan, each of Shaw and Thermal Label has and had a duty to discharge its duties with respect to the Plan solely in the interest of the Plan Participants and their beneficiaries and:

(a)     for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan;

(b)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(c)     by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(d)     in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

46.     Defendants' failure and refusal to make or cause to be made any contribution to the Plan on behalf of the Participants and their beneficiaries, including Cochran and Bricker, from in or about December 2021 to the present or to otherwise follow the terms of the Plan was in violation

of each and every one of their fiduciary duties as set forth above, resulting in losses to Plaintiffs in an amount to be determined at trial.

## COUNT III: ACTION UNDER 29 U.S.C. § 1132(a)(2), PERSONAL LIABILITY FOR BREACH OF FIDUCIARY DUTY (BY PLAINTIFFS ON BEHALF OF PLAN AGAINST THERMAL LABEL AND SHAW)

47.     Plaintiffs incorporate paragraphs 1 through 46 by reference as though fully stated herein.

48.     Pursuant to 29 U.S.C. § 1132(a)(2), a participant or beneficiary may bring a civil action for relief under 29 U.S.C. § 1109 if a person who is a fiduciary with respect to a plan breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries.

49.     Under 29 U.S.C. § 1104(a), as a fiduciary with respect to the Plan, each of Shaw and Thermal Label has and had a duty to discharge its duties with respect to the Plan solely in the interest of the Plan Participants and their beneficiaries and:

(a)     for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan;

(b)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(c)     by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

6590127.1

(d)     in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

50.     By failing to make or require to be made the Safe Harbor Contributions or to otherwise enforce the terms of the Plan, each of Shaw and Thermal Label has violated each of the aforementioned fiduciary duties, resulting in losses to the plan in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

A.     Certify this case as a class action on behalf of the Class as defined above, appoint Cochran and Bricker as representatives of the Class, and appoint their counsel as Class Counsel;

B.     Enter a declaratory judgment pursuant to 29 U.S.C. § 1132(a)(1)(B) and 28 U.S.C. § 2201, declaring that Plaintiffs are entitled to the Safe Harbor Contribution in accordance with the Plan in effect at the time each Safe Harbor Contribution was due and that Defendants Thermal Label and Shaw have each violated the Plan and their fiduciary duties by failing to make or require to be made this contribution;

C.     Grant preliminary and permanent injunctions pursuant to 29 U.S.C. § 1132(a)(3) and Fed. R. Civ. P. 65 compelling Defendants Thermal Label and Shaw to comply with the terms of the Plan then in effect and to otherwise make Plaintiffs whole under the Plan;

D.     Enter an order compelling Defendant Thermal Label to pay Plaintiffs the full amount of contributions to the Plan on behalf of each Plaintiff to which each Plaintiff is entitled;

11

**E.** Enter an order requiring Defendants Thermal Label and/or Shaw to make good to the Plan losses to the Plan resulting from Thermal Label and/or Shaw's breach of fiduciary duty, as applicable, and to restore to the Plan any profits of Thermal Label and/or Shaw which have been made through use of assets of the Plan by Thermal Label and/or Shaw, as applicable;

**F.** Ener an order removing Shaw as Trustee of the Plan;

**G.** Award damages to Plaintiffs to fully compensate each Plaintiff for injuries suffered as a result of Defendants Thermal Label and Shaw's wrongful conduct;

**H.** Disgorgement of any profits or gain Defendants Thermal Label and/or Shaw have obtained as a result of the wrongful action alleged in this complaint and equitable distribution of any profits or gain to Plaintiffs;

**I.** Award reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1);

**J.** Such other legal and equitable relief as this court deems necessary and appropriate.

Respectfully submitted,

**WOOLF, McCLANE, BRIGHT,
ALLEN & CARPENTER, PLLC**

*s/ J. Keith Coates, Jr.*
J. Keith Coates, Jr. (BPR # 025839)
J. Chadwick Hatmaker (BPR # 018693)
Grace Malone Ewell (BPR # 040253)
Post Office Box 900
Knoxville, TN 37901
(865) 215-1000
chatmaker@wmbac.com

Attorneys for Defendant